**WEINER v. SENTINEL FIRE INS. CO.**
**et al.**
**COLIN v. SAME.**
**No. 133.**

Circuit Court of Appeals, Second Circuit.
Jan. 11, 1937.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

Mendes, Krisel & Lessall, of New York City (Herman Mendes and Jacob Krisel, both of New York City, of counsel), for defendant-appellant Fred Colin.

Powers, Kaplan & Berger, of New York City (Abraham Kaplan and George I. Gross, both of New York City, of counsel), for defendants-appellees.

AUGUSTUS N. HAND, Circuit Judge.

One Max Brandenburg was the owner of a bond and mortgage made to him by Kady Schaffer. The mortgage was to secure payment of the sum of $32,000, was a first lien on premises in Westchester county, N. Y., and contained a covenant that the mortgagor should "keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee." About three years after the making of the bond and mortgage Brandenburg assigned his interest to one Stein, who thereafter reassigned it to Brandenburg. The principal having been reduced to $29,500, Brandenburg assigned the bond and mortgage to the defendant New York Title & Mortgage Company. On the date of this assignment the latter company entered into a participation agreement with Brandenburg which provided that it should have a share in the bond and mortgage to the extent of $22,000 and interest at the rate of 5½ per cent. per annum, and that Brandenburg was to be the owner of the balance but that the ownership of the Title & Mortgage Company should be superior to that of Brandenburg. The agreement also provided that the Title & Mortgage Company might assign to any individual its interest in the bond and mortgage not to exceed $22,000, and was authorized to col-

lect the entire income derived therefrom, retaining, however, the amount applicable to its share, while paying the balance to Brandenburg. It also authorized the Title & Mortgage Company to receive payment of the entire principal, but obliged it to account to Brandenburg for any part received in excess of $22,000. The agreement further provided that the Title & Mortgage Company should "have all the rights of any holder of said bond and mortgage, and in the event of any default * * * the exclusive right to foreclose the same and receive the proceeds of sale from the Referee," but that Brandenburg should in any "event have the right to an accounting for all moneys received" by the Title & Mortgage Company in excess of its ownership in said bond and mortgage. It added that: "All rights and authority given under this article by the party of the second part (i. e. Brandenburg) are irrevocable." The final article of the agreement provided that the Title & Mortgage Company was to notify Brandenburg of any default on the bond and mortgage and of any foreclosure by making the latter or his assigns a defendant in any foreclosure suit without further notice, but was to be under no other obligation to protect the interest of Brandenburg under any such suit or upon any sale under any such foreclosure. After the making of the participation agreement with Brandenburg, the Title & Mortgage Company assigned its superior interest in the bond and mortgage to the defendants Chase National Bank and William G. Barr as trustees under the will of Robert I. Barr, deceased, and guaranteed payment thereof to the extent of such superior interest. Under the instrument of guarantee the Title & Mortgage Company was made the agent of the trustees "to sue for and receive the proceeds of any policy of fire insurance covering the mortgaged premises in favor of the insured."

On August 12, 1931, Fred Colin, the defendant-appellant, purchased the junior participating interest in the bond and mortgage from Brandenburg. Prior to that time the plaintiff Weiner had become the owner of the mortgaged premises, and policies of fire insurance were issued by Sentinel Fire Insurance Company and Rhode Island Insurance Company, defendants-appellees, insuring Weiner against loss by fire, the first company in the sum of $10,000, and the second in the

sum of $22,000. Each policy contained the provision: "Loss, if any payable to New York Title & Mortgage Company as 1st mortgagee," and also had a mortgagee clause reading as follows:

"Loss or damage, if any, under this policy, shall be payable first to the New York Title and Mortgage Company, or owner of the mortgage guaranteed by the New York Title and Mortgage Company, covering the premises hereby insured, it being understood that upon request the New York Title and Mortgage Company will inform this Company of the name and address of the person to whom they may have assigned said mortgage, if any, as mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property. * * *"

On August 14, 1932, and while the above policies were in force, the mortgaged premises were damaged by fire, and the owner Weiner filed proofs of loss with the defendants-appellees and other insurance companies. As the amount of the loss was disputed, this action was brought against all the insurance companies, also the Title & Mortgage Company and the Morris Plan Company. The latter were joined because they were named as mortgagees in different policies involved in the fire. The plaintiff Weiner and the defendants Morris Plan Company, Employers Fire Insurance Company, and Harmonia Fire Insurance Company adjusted their differences and thus were eliminated from the litigation.

On April 24, 1933, the defendant Title & Mortgage Company filed an answer to Weiner's complaint, in which it alleged that it held a senior participation interest in the mortgage covering the premises described in the policies of the defendants-appellees to the extent of $22,000 and that Fred Colin held a junior participation interest in the mortgage to the extent of $5,000. The attorney for the Title & Mortgage Company informed Colin that the latter should intervene as a defendant in the action to protect his interest, and thereafter he did intervene by consent of the parties. Later, without consulting Colin or notice to him, the defendants Sentinel Fire Insurance Company, Rhode Island Insurance Company, Title & Mortgage Company, and Chase National Bank and William G. Barr, trustees under the will of Robert I. Barr, deceased, pursuant to the terms of the policies, entered into an agreement for the appraisal of the fire damage and the appraisers made an award fixing the loss at $8,832.63. The trustees Chase National Bank and William G. Barr filed a cross-petition in the action attacking the award as fraudulent and collusive, but it was sustained by the court, their cross-petition was dismissed, and no appeal was taken from the order of dismissal. Colin filed cross-actions against the defendants-appellees insurance companies demanding judgment for $5,000 against them for the loss alleged to have been payable to him by reason of his share in the mortgage. The issues raised by the cross-actions were tried before Judge Rippey and a jury. He held that Colin was bound by the appraisal, the validity of which had already been sustained by Judge Coxe, dismissed the cross-actions, and directed a verdict for the trustees against the insurance companies for the amount of the award. From this judgment Colin has appealed on the ground that he was not bound by the appraisal held without notice to him and should have been allowed to prove at the trial that the fire loss was greater than the amount awarded.

It seems clear to us that the judgment of the court below was right. The participation agreement provided that the Title & Mortgage Company should have all the rights of any holder of the mortgage, including the right to foreclose and collect the income and that these rights were irrevocable. Colin acquired a junior interest derived from Brandenburg which was subject to the provisions of the participation agreement. Brandenburg only had the right to an accounting of sums received by the Title & Mortgage Company. By the insurance policies the loss was made payable to the latter as mortgagee. The mortgagee clause covered only the Title & Mortgage Company, or an assignee to whom it had assigned its interest under a guarantee of the same. Colin was not an assignee of that company, but of Brandenburg, and stood in his place and not in that of the Title & Mortgage Company.

■ The contention that the mortgagee clauses were invalid because different from

the standard form is without merit. The standard form of each policy, without the special clause in the annexed rider which made the loss payable to the Title & Mortgage Company, contains the following: "Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing." Irrespective of this, the law of the state of New York does not forbid special agreements relating to the interests of the mortgagees. Hessian Hills Country Club v. Home Ins. Co., 262 N.Y. 189, 198, 200, 201, 186 N.E. 439.

 The appellant argues that, because the owner of the property had agreed in the mortgage to procure insurance for the benefit of the mortgagee, Colin in some way became entitled to share in the proceeds derived from the policies even if the amount was insufficient to satisfy the senior claim of the trustees under the will of Robert I. Barr. It is true that, if the mortgagor neglected to perform his covenant to provide insurance for the benefit of the mortgagees, Colin could impress a lien upon any insurance moneys belonging to Weiner. Wheeler v. Factors' & T. Insurance Co., 101 U.S. 439, 442, 25 L.Ed. 1055. But such neglect would not create any right in Colin to whom the insurance was not made payable as against the insurance companies. In other words, the right would only be good against the mortgagor's interest which has turned out to be nil. The words in the policies "as interest may appear" do not show a purpose to cover Colin's lien. The loss was made payable to the Title & Mortgage Company, or to the owners of the share of the mortgage guaranteed by that company, and these owners were the trustees under the will of Robert I. Barr. The words "as interest may appear" meant as the interest between the Title & Mortgage Company and Weiner may appear, or, in the event of an assignment by the Title & Mortgage Company, as the interest may appear between its guaranteed assignee and Weiner. Only in case the loss exceeded $22,000 would

either Weiner or Colin have any interest in the proceeds of the policy.

The appellant, Colin, had no right to litigate the amount of the loss, for the reason that the participation agreement gave the Title & Mortgage Company full control over the mortgage and all the rights of any holder. Its power was coupled with an interest and was irrevocable. Terwilliger v. Ontario, C. & S. R. R. Co., 149 N.Y. 86, 92, 94, 43 N.E. 432. Under such circumstances, the New York courts have allowed one having a senior participation interest in a mortgage with powers similar to those given to the Title & Mortgage Company, even to satisfy a participation mortgage and take a new one without the consent of the holder of the junior interest, and have limited the latter to a lien on any amounts in excess of the interest of the senior owner. Lowenfeld v. Wimpie, 139 App.Div. 617, 124 N.Y.S. 178, affirmed 203 N.Y. 646, 97 N.E. 1108; Stafford v. New York Life Ins. Co., 235 App.Div. 538, 257 N.Y.S. 680, affirmed 260 N.Y. 696, 184 N.E. 150; Goodwin v. Gilsey, 210 App.Div. 31, 205 N.Y.S. 529. Under the participation agreement we are dealing with, the Title & Mortgage Company was given an irrevocable power to represent all persons interested in the mortgage subject only to accountability and any losses under the policies were payable only to it. Consequently it might invoke and become subject to the appraisal to fix the loss, and might in the absence of fraud, which was not claimed to have existed, bind all parties to the loss thus adjusted. Colin, therefore, had no independent right to litigate the amount of loss as fixed by the appraisers. Since the award was far less than $22,000, the senior interest in the mortgage, only that interest was entitled to receive anything from the insurance companies. Accordingly the court properly directed a verdict in favor of the trustees and dismissed the cross-actions interposed by Colin.

Judgment affirmed.